FILED & JUDGMENT ENTERED
Steven T. Salata

Dec 24 2014

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 13-31778 |
| PROTECTION SYSTEMS ) | |
| TECHNOLOGIES, INC., ) | |
| ) | Chapter 11 |
| ) | |
| Debtor. ) | |

### ORDER SUSTAINING OBJECTION TO CLAIM OF MCNAUGHTON & ASSOCIATES, PLLC

**THIS MATTER** arises from an objection by David E. Taylor ("Taylor") to a $25,145.00 proof of claim filed by Debtor's former litigation counsel, McNaughton & Associates, PLLC (the "McNaughton Firm" and "McNaughton Claim"). A hearing was held on November 4, 2014.

### BACKGROUND

The Debtor, Protection Systems Technologies, Inc. ("PST" or "Debtor"), filed a Chapter 11 case in this judicial district on August 15, 2013. A consensual plan was negotiated and confirmed on September 14, 2014. This contested matter, indeed the case itself, is the final chapter in a lengthy dispute among the Debtors' shareholders.

Formed in 2003, PST provided goods and services to fire suppression companies.

1

PST was owned by Bryan Futch ("Futch") (34%), Westley Stout, Jr. ("Stout") (33%), and Taylor (33%). Futch served as president, Stout as treasurer, and Taylor as vice president.

For several years, PST was a successful, viable business. Then, in 2008, the three shareholders had a parting of ways. Futch and Stout (collectively, the "Majority Shareholders") created a separate company, BnW Real Estate, LLC ("BnW"), caused PST to assign its contract to purchase a building to BnW, and caused PST to lease the premises from the new entity. The Majority Shareholders also diverted PST business and assets to their new company. Taylor was not informed of these transgressions. When he discovered what had transpired, the Majority Shareholders terminated his employment with PST and shut him out of its management.

As a result, Taylor sued all concerned in Superior Court, Mecklenburg County, (the "State Court"). *Taylor v. Protection Systems Technologies, Inc., et al.*, Case No. 11-CVS-7126 (the "State Action"). Among other things, Taylor accused the Majority Shareholders of usurping corporate opportunities belonging to PST and in so doing, of breaching fiduciary duties owed to him as a minority shareholder. In order that his equity interest could be "cashed out," Taylor also sought judicial dissolution of PST under N.C.G.S. § 55-14-30(2). PST, BnW, Futch and Stout, (collectively the "State Action Defendants") were all represented by the McNaughton Firm in the State Action.

On June 8, 2013, following a bench trial, the State Court ruled in favor of Taylor. That court determined that Taylor "suffered injuries separate and distinct from any injury that may have been sustained by the other shareholders." The State Court agreed with Taylor that the Majority Shareholders had usurped PST's corporate opportunities and breached the "special duty" owed by the Majority Shareholders owed to Taylor as a

2

minority shareholder. Thus, the State Court concluded that Taylor could "maintain individual actions for breach of fiduciary duty against Futch and Stout as majority shareholders . . . instead of being limited to a shareholder derivative actions." Judgment was entered against the Majority Shareholders in the amount of $120,052.16 plus post-judgment interest. Rather than dissolving the corporation, the State Court granted Taylor a judgment against PST in the amount of $246,699.67 plus post judgment interest, representing his distributive share of the company equity (the "State Judgment"). Costs were taxed against all Defendants, PST included. All parties appealed.

Motions to stay enforcement of the State Judgment were pending when PST received notice from the Sheriff indicating an intent to execute upon its assets. A levy upon the PST assets for a claim of this magnitude would have likely put PST out of business and rendered it involvement. Consequently, PST filed bankruptcy.

The State Court's judgment and the shareholder fight remained a central issue throughout PST's Chapter 11 case. PST sought permission to continue the appeal in the state system with the estate bearing all Defendants' costs and attorney's fees. It proposed that McNaughton continue to serve as counsel for all of the Defendants. PST asserted that the State Judgment was erroneous such that Taylor was owed nothing.

Alternatively, PST argued that the judgment liabilities of Futch and Stout were based upon misappropriation of corporate opportunities (ironically, owed to it) and belonged to the estate, not Taylor. Ignoring the obvious conflict of interest arising out of that statement, PST contended that since these claims were asserted against Futch and Stout as officers and directors, it was legally obliged to indemnify them.

Taylor opposed that motion, arguing that the liabilities the Majority Shareholders

3

owed him were founded on state law fiduciary duties owed by majority shareholders to their minority shareholders, not director obligations or derivative claims. According to Taylor, PST had no indemnity obligations to the Majority Shareholders and absolutely no reason to pay for BnW's representation. Taylor additionally pointed to the blatant conflicts of interest between PST, the Majority Shareholders, and BnW in the appeal and asserted that the McNaughton Firm was clearly ineligible to represent the Debtor under Code Section 327.

    Meanwhile, Taylor sought a ruling from this Court that his collection efforts against the Majority Shareholders and BnW were not stayed by PST's bankruptcy filing. The Debtor and the Majority Shareholders were opposed to this based on the same contentions described above. A side issue arose over whether PST's obligations to Taylor under the Judgment were in the nature of equity, not debt, such that they should be subordinated to creditor claims under Code Section 510.

    A hearing on these matters was commenced on September 24, 2013. At that hearing, due to conflicts of interest concerns as to whether the McNaughton Firm could continue to represent the Debtor, a Chapter 11 Trustee was appointed. She was charged with considering the proposed appeal from the perspective of PST's creditors. The hearings were continued, and the Trustee made her report. She concluded that even if successful, the appeal would negatively impact the creditor body. Hence, she recommended that PST not pursue an appeal of the State Court's judgment. Further hearings were held, but the underlying motions were never decided because the parties reached a settlement. A side deal was reached between Taylor and the Majority Shareholders.

As a result, the parties arrived at a consensual Chapter 11 plan, which called for PST's assets to be sold to a third party. Under the plan, the buyer would assume responsibility for distributions to the Debtor's claimholders. Taylor's claims against PST's bankruptcy estate were settled, allowing $200,000 as a general unsecured debt, and subordinating the remaining debt of $137,178.72 to all other creditors. The plan afforded parties in interest the opportunity to object to claims post confirmation. The plan was confirmed on September 14, 2014, and on October 2, 2014, Taylor exercised his right to object to the McNaughton Claim.

**The McNaughton Claim Objection.**

The McNaughton Claim arises from the State Action and involves the same contentions that were raised by the aforementioned motions, but never decided by final order in this court.

Before bankruptcy, PST paid the legal fees and expenses of all of the State Court defendants, totaling $157,926.00 (cash payments of $138,459.602, plus a $15,000 in kind transfer).[1] The McNaughton Firm claims that at the petition date, it was owed another $25,145.00 for services related to the appeal. Attached to the McNaughton Claim is an invoice generally detailing the services performed, dates, and amounts.[2] The invoice does not differentiate between services rendered for the benefit of the Debtor and those that benefitted Futch, Stout, and BnW. Instead, all sums were billed to the Debtor.

---

[1] The Debtor transferred a Chrysler M300 automobile to the McNaughton Firm before bankruptcy in partial payment of the bill.

[2] Many of the entries are partially redacted.

5

**Taylor's Objection.**

In his capacity as an unsecured creditor, Taylor objects to the McNaughton Claim. First, Taylor asserts that PST has no legal obligation to pay the legal expenses of the Majority Shareholders or BnW. Second, Taylor acknowledges that PST may have some responsibility to the McNaughton Firm for its own defense costs. But, because PST has previously paid all of the Defendants costs, Taylor asserts that the Debtor has already grossly overpaid its share. According to Taylor, any further sums owed should be the responsibility of the other Defendants, not PST.

Meanwhile, the McNaughton Firm asserts that Taylor sued the Majority Shareholders as officers and directors of PST for their alleged mismanagement of the Debtor. The McNaughton Firm reads PST's bylaws to require, or at least permit, it to indemnify its officers and directors for their defense costs. Second, the McNaughton Firm claims that it was agreed at the outset of its defense of the State Action that PST would be responsible for paying the other Defendants' legal bill. Finally, the McNaughton Firm attempts to refute Taylor's fee apportionment argument on the grounds that it actually provided $339,361.50 of professional services to all the Defendants. McNaughton alleges that it voluntarily discounted its fees and only invoiced Defendants $157,926.00 for the representation. According to McNaughton, even if PST was only obliged to pay one half of the defense costs, as Taylor contends, the Debtor has not overpaid its share.

**Discussion**

This Court has jurisdiction over this dispute pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6

The creditor's filing of a proof of claim constitutes prima facie evidence of the amount and validity of the claim. *In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004) (citing 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f)). The burden then shifts to the objecting party to introduce evidence to rebut the claim's presumptive validity. *Id*. (citations omitted). If met, the claimant must ultimately prove the amount and validity of a claim by a preponderance of the evidence. *Id*. (citations omitted).

However, that burden is heightened when the claimant is an "insider" of the debtor. *Id*. at 640-41 (citing *Pepper v. Litton*, 308 U.S. 295, 306 (1939)). Per 11 U.S.C. § 101(31)(B), an insider is defined as a "director of the debtor; officer of the debtor; person in control of the debtor; partnership in which the debtor is a general partner; general partner of the debtor; or relative of a general partner, director, officer, or person in control of the debtor." Because of the influence and control an insider may wield, an insider's transactions with a debtor are subject to "rigorous" or "strict" scrutiny. *Harford Sands*, 372 F.3d at 640 (citing *Fabricators Inc. v. Technical Fabricators*, Inc., 926 F.2d 1458, 1465 (5th Cir. 1991); *Brewer v. Erwin & Erwin, P.C.*, 942 F.2d 1462, 1465 (9th Cir. 1991); *In re Inter-Island Vessel Co., Inc.*, 98 B.R. 606, 608-09 (Bankr. D. Mass. 1988)). When considering such a situation, the "burden is on an insider claimant to show the inherent fairness and good faith of the challenged transaction." *Id*. (citation omitted).

Futch and Stout are clearly insiders of the Debtor. McNaughton is seeking to assert their indemnification rights and therefore carries their heightened burden of proof. Further, on this record, the McNaughton Firm would appear to be an insider as well given its representation of the Majority Shareholders and its willingness to overlook, before and after bankruptcy, the obvious conflicts of interests between PST and the other State

7

Action Defendants. Thus, the claims at issue today require a showing of inherent fairness and good faith and will be subjected to a rigorous review. *Id*.

### I. PST Has No Obligation or Authority to Pay BnW's Legal Fees.

As found by the State Court, BnW was a separate corporation created by Futch and Stout to exclude Taylor from the decision making process and to misappropriate corporate opportunities owed to PST. PST has no liability whatsoever for the fees of BnW. BnW's and PST's interests were and always have been diametrically opposed. Moreover, to the extent that PST paid for BnW's representation, the McNaughton Firm likely received a Section 548 fraudulent conveyance,[3] and under Section 502(d), McNaughton may well not presently hold an allowable claim against the estate, regardless of its merits. *See* 4 COLLIER ON BANKRUPTCY ¶ 502[2][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("Most courts find that there is no prohibition against the trustee's asserting section 502(d) as an affirmative defense to a claim of a creditor even if the trustee's claim is time-barred or otherwise nonrecoverable.").

### II. Debtor Has No Obligation or Authority to Pay Futch and Stout's Legal Fees.

This Court also agrees with Taylor that this is not a circumstance where PST had an obligation to indemnify the Majority Shareholders. Under PST's bylaws, the Debtor is obligated to indemnify its "Directors, Officers, and employees whether or not then in service as such, against all reasonable expenses actually and necessarily incurred by him or her in connection with the defense or any litigation to which the individual may have been made a party because he or she is or was a Director, Officer, or employee of the

---

[3] Section 9.1 of the Amended Plan preserves such avoidance actions. Under Section 7.1, the Debtor has the responsibility to purse the same.

Corporation." The same document provides that the director, officer or employee shall have no right to indemnification "in relation to matters as to which he or she has been adjudged liable to the Corporation for negligence or misconduct in the performance of his or her duties, or was derelict in the performance of his or her duty as Director, Officer, or employee."

The two sides disagree about the nature of the claims asserted against Futch and Stout in the State Action. According to Taylor, Futch and Stout were sued not as directors, officers, or employees of PST, but as its majority shareholders. He treats the claims as a breach of that special duty owed under North Carolina law by majority shareholders of a closely held corporation to their minority shareholders. Because neither the North Carolina Business Corporation Act nor the Debtor's bylaws permit indemnification of Majority Shareholders, Taylor argues the claim for indemnification should be barred.

The McNaughton Firm disagrees. It notes that Taylor's nine-count action includes claims against Futch and Stout for their mismanagement of PST. Complaint, Paragraphs 59 and 63 ("PST's mismanagement by Futch and Stout") and 70 ("gross misconduct in the management of PST"). It further cites statements made by Taylor's counsel during the action purporting to suggest that his claims were founded on allegations of corporate mismanagement by Futch and Stout. *See* Transcript of Hearing before the Honorable Judge Robert C. Ervin, September 21, 2011, Page 17, lines 11 through 20. From McNaughton's perspective, Futch and Stout were accused of mismanaging PST in their capacities as directors, officers, and employees. Thus, according to McNaughton, an indemnity obligation arises under Paragraph 6.1 of the PST

9

Bylaws.

Generally speaking, direct shareholder actions are not permitted. *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 660, 488 S.E.2d 215, 220-21 (1997) (citations omitted). The Supreme Court of North Carolina has, however, recently reaffirmed two narrow exceptions to this rule. In *Green v. Freeman*, the court held that shareholders "may bring an individual action against a third party for breach of fiduciary duty when (1) 'the wrongdoer owed [them] a special duty' or (2) they suffered a personal injury 'distinct from the injury sustained by . . . the corporation itself.'" 749 S.E.2d 262, 268 (2013) (quoting *Barger*, 346 N.C. at 659, 661, 488 S.E.2d at 219, 221). The court "recognized the creation of a special duty 'when the wrongful actions of a party induced an individual to become a shareholder; . . . when the party performed individualized services directly for the shareholder; and when a party undertook to advise shareholders independently of the corporation.'" *Id*. at 269 (quoting Barger, 346 N.C. at 659, 488 S.E.2d at 220). Turning to the other exception, North Carolina courts explain that a personal injury distinct from that of the corporation itself is, for example, the disturbance of reasonable expectations of secure employment and participation in management. *See Meiselman v. Meiselman*, 309 N.C. 279, 289-90, 307 S.E.2d 551, 557-58 (1983). On the other hand, merely losing an investment as a result of wrongful actions by a majority shareholder would not permit a minority shareholder to maintain an individual suit. *Green*, 749 S.E.2d at 269.

As an initial procedural barrier, Taylor did not follow the essential statutory requirement of effecting demand on the corporation needed to sustain a derivative

action;[4] therefore, a finding that the State Court Judgment arose from stockholder derivative suit would be misguided at best. *See* N.C.G.S. § 55-7-42; Report and Recommendation of Limited Powers Chapter 11 Trustee at 17.

That significant issue aside, the State Court made specific findings and conclusions mirroring the Supreme Court of North Carolina's decisions in *Green v. Freeman* and *Barger v. McCoy Hillard & Parks*, clearly indicating that Taylor brought this suit in his capacity as a minority shareholder against the Majority Shareholders. These include that "Futch and Stout, as majority shareholders in PST, owed [Taylor] a fiduciary duty of care as a minority shareholder in PST" and "[t]hat [Taylor] has suffered injuries separate and distinct from any injury that may have been sustained by the other shareholders or PST itself." State Court Judgment at ¶ 61, 68. To be abundantly clear, the State Court specifically determined that "[Taylor] may maintain individual actions for breach of fiduciary duty against Futch and Stout as majority shareholders based on allegations of their wrongdoing instead of being limited to shareholder derivative actions." *Id.* at 67. Thus, the State Court Judgment reflects Taylor's individual claims as a minority shareholder against majority shareholders rather than claims brought in a derivative suit. Consequently, neither the North Carolina Business Corporation Act nor the Debtor's bylaws give rise to a right of indemnification that could support

---

[4] Until 1995, North Carolina recognized an equitable exception excusing a shareholder from making demand where demand would be futile. *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 408, 537 S.E.2d 248, 261 (2000) (citing N.C.G.S. § 55-7-40(b)(1990)). However, in 1995, the North Carolina General Assembly repealed the futility exception. *Id.* at 411, 537 S.E.2d at 262. Under the current version, "the demand requirement is a condition precedent to the institution of any and all derivative actions." *Id.*; *see also* Russell M. Robinson, II, ROBINSON ON NORTH CAROLINA CORPORATION LAW, § 17.03[2] at 1-17 (2014) (noting that the futility exception "has caused excessive and unnecessary litigation on a preliminary point, which was the principal reason for repealing the futility exception rule and adopting a universal-demand rule").

11

McNaughton's claim.

Even if the Court were to adopt McNaughton's reasoning that the State Court Action was a derivative claim, there is ample authority to conclude that Futch and Stout, and in turn McNaughton, would not be eligible for indemnification. Subsection 55-8-51 of the North Carolina General Statutes prohibits a corporation from indemnifying a director:

> (1) In connection with a proceeding by or in the right of the corporation in which the director was adjudged liable to the corporation; or
>
> (2) In connection with any other proceeding charging improper personal benefit to him, whether or not involving action in his official capacity, in which he was adjudged liable on the basis that personal benefit was improperly received by him.

Yet, under N.C.G.S. § 55-8-57, a corporation may expand the right to indemnification through its articles of incorporation, bylaws, contract, or resolution. Subsection 55-8-57 provides:

> [A] corporation may in its articles of incorporation or bylaws or by contract or resolution indemnify or agree to indemnify any one or more of its directors, officers, employees, or agents against liability and expenses in any proceeding (including without limitation a proceeding brought by or on behalf of the corporation itself) arising out of their status as such or their activities in any of the foregoing capacities . . . .

That provision is, however, subject to the exception that "a corporation may not indemnify or agree to indemnify a person against liability or expenses he may incur on account of his activities *which were at the time taken known or believed by him to be clearly in conflict with the best interests of the corporation.*" *Id*. (emphasis added). While no North Carolina appellate court has cited subsection 55-8-57, the findings in the State Court Judgment indicate that Futch and Stout are not eligible for indemnification

12

under a plain reading of the "conflicts of interest" exception of that statute. Indeed, it would be difficult to craft an argument that their creation of BnW and subsequent looting of the Debtor was not known or believed to be in conflict with the Debtor's best interests. Moreover, Paragraph 6.1 of the PST bylaws does not provide a right to reimbursement "in relation to matters as to which he or she has been adjudged liable to the Corporation for negligence or misconduct in his or her duties, or was derelict in the performance of his or her duty as Director, Officer, or employee."

### III. Any Claims of Futch and Stout Against the Debtor Have Been Waived, Including Indemnification Rights.

The monies currently sought are essentially claims for indemnification by the McNaughton firm as against PST's estate. Although not argued by the parties, the terms of the confirmed Plan provide additional grounds to conclude that McNaughton cannot recover for indemnification of Futch and Stout.[5]

Under the confirmed Plan, Futch and Stout expressly agreed to waive any and all claims that they may hold against the Debtor or its estate. The Plan provides in relevant part that "Neither Bryan Futch nor Westley Stout shall hold an Allowed Unsecured Claim or participate in the distribution to the holders of Class 2 Claims." Amended Chapter 11 Plan at Section 11.13. Based upon this waiver, the Debtor's principals currently hold no indemnification rights. Thus, if McNaughton is to be compensated further, it must be for its work on behalf the Debtor and not for its officer and directors.

---

[5] No one has argued that Futch and Stout rather McNaughton must assert claims for indemnity, so we will not delve into this question.

13

**IV. Given the Obvious Conflict of Interest, PST is not Obligated to the McNaughton Firm.**

While PST had a right to defend itself from Taylor's attempts to dissolve it, and doubtless required representation, separate counsel should have been hired.

As noted above, the wayward actions of Futch and Stout benefitted themselves and were injurious to the company. Having been sued by Taylor, PST should have had separate counsel as "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." N.C. Rev. R. Prof'l Conduct 1.7(a). One circumstance in which a concurrent conflict of interest exists is if "the representation of one client will be directly adverse to another client." *Id.* at 1.7(a)(1).

In short, the McNaughton firm sought to represent parties with conflicts of interest with one another. In a suit founded on the contention that the two majority shareholders usurped corporate opportunities belonging to PST, the McNaughton Firm was representing both the alleged victim and the alleged thieves. Further, as counsel for PST, the McNaughton Firm had fiduciary duties to all of the shareholders, including Taylor. Yet, it simultaneously attempted to represent two of the shareholders as against one.

These conflicts became even more obvious after the State Court issued its judgment. If not before, at that point in time, the McNaughton Firm should have recognized that its representation of PST and the other Defendants was incompatible. By then, PST had judicially recognized claims against the Majority Shareholders for usurping its corporate opportunities. It was in the best interests of PST to side with Taylor, not the other Defendants.

One might be inclined to pan this conflict as just a fight among shareholders over the PST carcass. However, when the State Court entered its judgment against PST, the company was rendered insolvent. *See* Amended Chapter 11 Disclosure Statement at 4 ("If the Taylor Judgment were upheld as a valid, final and enforceable Judgment, it would render the Debtor insolvent since its liabilities would then exceed its assets."). When it became insolvent, if not before, PST indisputably acquired fiduciary duties to its creditors. The interests of PST's estate and those of the majority shareholders thus clearly diverged such that continued representation of all Defendants by a single law firm was not permissible.

Even then, the participants refused to acknowledge the conflict. In this Court, the McNaughton Firm and PST's bankruptcy counsel pressed for approval to continue the appeal of the state court Judgment, at PST's expense, obviously in hope of extricating its majority shareholders from liability.[6] At that point, Taylor and this Court expressed grave concerns regarding the inherent conflicts of interest and the McNaughton Firm's ability to continue representing all the State Court Defendants.

If for no other reason, the McNaughton Firm's claim against the Debtor's estate should be denied because these conflicts of interest compromised its representation.

**V. PST has Already Paid a Disproportionate Share of the McNaughton Firms' Bill**

Finally, this Court agrees with Taylor's alternative equitable assertion that even though PST would have had to pay for its own defense costs, it should not have borne the

---

[6] There was no need to continue the appeal from the Debtor's perspective, given that Taylor's claims were equity interests and could be subordinated to the claims of PST's creditors. And as the Trustee concluded, the appeal was counterproductive to the estate.

15

costs for all State Court Defendants. Even though the primary claims in the State Court Action were against the others, PST paid all of the legal fees, amounting to $163,459.60. Now, the McNaughton Firm asks that it pay more. On this record, the Debtor has grossly overpaid the claimant for the work that benefitted others.

As to the McNaughton Firm's contention that it actually provided $339,361.50 of professional services, there is no extrinsic evidence in this record showing the gross fees, alleged discount, or the reasons why the alleged discount was made. The short answer is that the lower sum is what was billed and that is the only evidence of what was owed.

Taylor has suggested by way of argument that at most PST should have only paid half. However, the evidence does not even show that half is a reasonable amount. The McNaughton Firm's current $25,145.00 claim is largely for services related to an appeal by a company that had decided to file bankruptcy.[7] Because Taylor's judgment claims against PST were clearly equity interests, subordinate to the claims of PST's creditors, and destined for cancellation in any Chapter 11 plan,[8] there was no reason for PST to continue the appeal. Meaning, the work to pursue an appeal did not benefit PST.

Consequently, Taylor's Objection is **SUSTAINED**; the McNaughton Firm's Claim is **DISALLOWED**.

**SO ORDERED.**

**This Order has been signed electronically.**         **United States Bankruptcy Court**
**The judge's signature and the court's seal**
**appear at the top of the Order.**

---

[7] A review of the time entries reflects that the McNaughton Firm was aware of that decision.

[8] See 11 U.S.C. 1129(b)(2)(B)(ii).

16